# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

ANDREW GROSSBARD,                                                Case No:

    Plaintiff,

v.

LOMAR APARTMENTS, LLC, and
BRUCE GOTTLIEB

    Defendants.
_____/

## COMPLAINT FOR INUJUNCTIVE RELIEF

COMES NOW, Plaintiff, ANDREW GROSSBARD (hereinafter "Mr. Grossbard"), by and through the undersigned counsel, and files this Complaint against the Defendants, LOMAR APARTMENTS, LLC. (hereinafter "Lomar"), and BRUCE GOTTLIEB (hereinafter "Gottlieb") and states as follows:

## JURISDICTIONAL ALLEGATIONS

1. The Court has original jurisdiction pursuant to 11 U.S.C. § 1331, 42 U.S.C. § 3613, as this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 et seq.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) because (b) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred and are occurring within this judicial district and a substantial part of property that is the subject of the action is situated within this judicial district.

3. At all times material, Lomar, owned and operated the residential rental property located at 500 South Crescent Drive, Hollywood, Florida 33021.

4. At all times material, Gottlieb was the sole officer of Lomar and the property at 500 South

Crescent Drive, Hollywood, Florida 33021, and is otherwise *sui juris*.

5. Defendant, Lomar, is a limited-liability corporation licensed and doing business in Broward County, Florida.

6. Plaintiff, Mr. Grossbard, is a person with a handicap as defined by the Fair Housing Act, and notwithstanding such disability is *sui juris*.

7. Mr. Grossbard has resided in different apartments owned and operated by Lomar Apartments since the late 1980s and has been the tenant in a year-to-year lease for Apartment 114 since 2009 and has always been an exemplary tenant. The unit at 500 South Crescent Drive, Apt. 114, Hollywood, Florida 33021 is a "dwelling" within the meaning of 42 U.S.C. § 3602(b), and a "dwelling unit" within the meaning of 24 C.F.R. § 100.21.

**GENERAL ALLEGATIONS**

8. Mr. Grossbard is currently a 62-year-old man who was lives with schizophrenia, a psychiatric disability and therefore considered "handicapped" under 42 U.S.C. § 3602(h).

9. Schizophrenia is a serious mental illness that affects how a person thinks, feels, and behaves, and Mr. Grossbard is substantially limited in the daily life activities of concentrating, thinking, communicating, working, and socializing.

10. Due to Mr. Grossbard's disability, he is not able to work and receives social security disability payments as well as receiving section 8 housing choice vouchers which pays part of his monthly rent.

11. Mr. Grossbard's lease for Apartment 114 was for a period of 12 months and was due to expire on October 31, 2023.

12. At all times material, Defendants had actual knowledge that Mr. Grossbard has a

disability.

13. Starting in the Spring of 2022, Lomar's agents believed that due to Mr. Grossbard's disability she was unable to speak with Mr. Grossbard because of his disability and their choosing not to speak with him directly.

14. Lomar's agent, Karen Gottlieb, called Mr. Grossbard's emergency contact and sister, Beth Grossbard, and insisted that she provide Lomar with her email so she could be contacted by building management for any notices pertaining to Mr. Grossbard, including but not limited to rent, repair appointments, maintenance issues, building information, need to enter apartments, and they would no longer be available to answer calls from Mr. Grossbard or return them for any issues unless communicated with them via email.  Ms. Gottlieb then said she was holding Beth Grossbard responsible for informing Andrew Grossbard of any email notice sent to her on his behalf.

15.  At that time, Andrew Grossbard had lived in different Lomar Apartments for more than 30 years and had always communicated effectively with the management.  He paid his rent early and is a model tenant.

16. This request had upset Mr. Grossbard and affected his feelings of independence and maintained that he had always taken care of his apartment issues himself and wanted to continue with things the way they have been since he moved in.

17. As a result of this incident, on September 20, 2022, Beth Grossbard requested a reasonable accommodation for a disability on behalf of her brother.  She advised Lomar that Andrew Grossbard does not use a computer or have access to the internet and communicates by phone, and that he should be the person who the management communicates with for issues related to the apartment.

18. Notwithstanding this request, Karen Gottlieb: "since you are listed as the contact person for your brother who does not have email, you will receive any notice to be mailed to him from Lomar. If it is not relevant to Andrew, you can just delete it. If it is relevant, you advise your brother."

19. Beth Grossbard lives in California and travels internationally for work or a regular basis and cannot advise her brother in a timely manner. If it was a matter of safety, and someone entered his apartment without his knowledge or permission, this could frighten him and been detrimental to his mental health.

20. Notwithstanding this request, Lomar and Gottleib entered into a lease agreement with Mr. Grossbard for 2022-2023.

21. At this same time, Lomar was changing their rent collection system and had requested that all rent payments be paid to them electronically through an on-line portal system called "rent café." Beth Grossbard requested that Andrew Grossbard be permitted to be allowed to continue to pay by check because he did not have a computer or know how to use a computer. The request was acknowledged and ignored.

22. At all times material, Lomar and Gottlieb had knowledge of Mr. Grossbard's disability, and Mr. Grossbard feels stigmatized and self-conscious about being a person with a disability. As such, he does not discuss the nature and extent of his disability.

23. On November 3, 2022, Ms. Grossbard again, after being ignored, sent the same request to the Defendants. On the same day, Mr. Grossbard, found a copy of his lease to renew at his front door.

24. On November 15, 2022, Mr. Grossbard came into the Disability Inclusion and Advocacy (DIAL) Clinic at Nova Southeastern University Shepard Broad College of Law for the

first time to seek legal advice.

25. On November 18, 2022, Mr. Grossbard signed the lease he found on his doorstep on November 3rd.

26. On November 21, 2022, Mr. Grossbard went to FedEx to pay his rent via rent cafe. He has difficulty using computers, because of his disability, but was informed by FedEx employees that he could pay through his phone.

27. On November 22, 2022, Mr. Grossbard went to the AT&T store to get tech support. They were not able to help him.

28. On December 2, 2022, Mr. Grossbard hand wrote a letter to Lomar, stating that he was not able to pay by phone. Lomar told him to go to either CVS or Walmart, to use their payment system. Mr. Grossbard was able to pay by this method, but actually paid twice.

29. Because of the fact that he was being ignored, Andrew Grossbard retained the services of the Disability Inclusion and Advocacy Law (DIAL) Clinic at Nova Southeastern University College of Law to represent him. On December 14, 2022, The DIAL Clinic sent a letter to Mr. Gottlieb and Lomar Apartments requesting reasonable accommodation, explaining what a reasonable accommodation is, and the applicable defenses therein. A doctor's letter was added that disclosed his disability and need for accommodation but did not delve into the nature and extent of his disability. See Exhibit "A" attached hereto. The requests asked of Gottlieb and Lomar were as follows:

   a. Mr. Grossbard has always paid his rent by writing a check and would like to kindly request that he be allowed to continue paying his rent in this manner.

   b. Mr. Grossbard requested that all communications regarding his apartment be made to him as he has done traditionally, via phone or written mail, not through

e-mail.

30. All communications relative to the requests for accommodation be communicated through counsel.

31. Following receipt of the letter, Mr. Gottlieb responded and acknowledged that if Mr. Grossbard has disabilities including the inability to use a computer and internet, he suggested that Mr. Grossbard set up a monthly ACH payment to Lomar.

32. On January 1, 2023, Mr. Grossbard attempted to pay his rent though the electronic system at Publix but was told that Publix did not take WIPs payments for Lomar [the manager of the Hollywood Publix, where Gottlieb suggested Andrew go in his response to you, is who relayed this to us] or CVS five different times, but was told his payment was rejected by Lomar. This caused him embarrassment in front of the people online waiting behind him. He then attempted to pay by check and was rejected by Lomar.

33. On January 3, 2023, Mr. Grossbard learned from Lomar that he had paid twice for the month of December and received a credit for the month of January.

34. On February 2, 2023, Mr. Grossbard attempted to pay his rent by check again and was again rejected. Mr. Grossbard went to the Lomar office with a check and, although people were visibly working inside, they would not open the door.

35. On March 1, 2023, Mr. Grossbard attempted to submit his payment for the months of February and March by check but was rejected again.

36. As Mr. Grossbard could not use the payment systems at CVS or Walmart and could not use electronic banking, Mr. Grossbard was very frustrated and became anxious, exacerbating his condition. On February 6, The DIAL clinic asked again for an accommodation to Mr. Gottlieb and Lomar.

Mr. Grossbard's disability prevents him from being able to understand and process information on a computer, therefore he is unable to set up or use anything that involves the internet. ACH payments are **electronic** payments that would require Mr. Grossbard to bank **electronically**, thus, requiring the use of the internet. Not allowing Mr. Grossbard to make his rent payments by check, a practice he has done consistently in the past, is limiting him the **major life activity** of **performing a manual task** and is hence, denying him an equal opportunity to use and enjoy his residence at Lomar Apartments. Treating persons with disabilities entirely the same as others may deny them the equal opportunity to use and enjoy a dwelling as rules, policies, practices, and services can have different effects on individuals with disabilities.

37. In this letter, the DIAL Clinic advised Lomar and Gottleib that if this request is not granted, then Mr. Grossbard will file a Fair Housing Complaint. In addition, Mr. Gottlieb was advised of the prohibition of retaliation under the Fair Housing Act and Lomar and Mr. Gottleib were directed that all correspondence should go through the DIAL Clinic.

38. On February 21st, Mr. Gottlieb again was asked about his decision for the accommodation under the Fair Housing Act.

39. On April 6, the DIAL Clinic advised Lomar and Gottleib that the DIAL Clinic filed a Fair Housing Complaint with the U.S. Department of Housing and Urban Development because Lomar refused to address or grant Mr. Grossbard's reasonable accommodation request and advised again on the prohibition of retaliation. Again, all notices were directed to be provided directly to the DIAL Clinic for Mr. Grossbard.

40. On April 6, 2023, Mr. Grossbard filed a Fair Housing Complaint with the U.S. Department of Housing and Urban Development.

41. On April 8, 2023, Gottlieb wrote to the DIAL Clinic again refusing to accept payment by check and only accept such payments electronically.

42. After several correspondence from the DIAL Clinic to Gottlieb, on April 26, 2023, Gottlieb allowed Grossbard to pay the outstanding amounts via check, but demanded that he have electronic payment set up for Mr. Grossbard:

> Please forward to LOMAR APARTMENTS the payment on behalf of Mr. Grossbard to bring his account current. As a courtesy because of the circumstances the landlord has not charged any late fees.
>
> Mr. Grossbard can pay his portion of the May rent by check. Lomar has over 300 tenants and they all have a story. Many of the tenants have been with Lomar for many years. Most people, me included, do not like change. (I don't like that everything with a Court has to be efiled and every Circuit virtually every Judge has different rules for submitting Orders and scheduling hearings but I have to deal with it).
> Lomar would request that once the account is up to date that Mr. Grossbard have someone assist him in setting up a monthly ACH payment so he doesn't need to do anything OR pay through WIPS.
> Please speak with Mr. Grossbard and send me an update.

43. On or about July 24th, Lomar directly advised Mr. Grossbard that his lease was not going to be renewed in October of 2023.

44. After July 24th, mail to Andrew Grossbard was being turned away from his mailbox as if he was no longer residing at his long-time home. A report was made to the postal inspector who noted that there was nothing from Mr. Grossbard that would have indicated that he moved.

45. On August 21, 2023, the Fair Housing investigative agency sent a notice that Lomar was the respondent in a complaint filed by Andrew Grossbard. Mr. Gottlieb immediately sent the DIAL Clinic an email asking about the substance of the complaint.

46. On Friday September 8th, Lomar provided notice again directly to Mr. Grossbard regarding the termination of his Lease on September 29th.

47. Bruce Gottlieb was personally involved, and/or had authorized, and/or ratified each and

every discriminatory or retaliatory act and denial of accommodation for Mr. Grossbard herein.

48. All actions by defendant were done with knowledge of the illegality of such actions.

49. Plaintiff has retained the services of the Disability Advocacy and Inclusion Clinic of Nova Southeastern University Shepard Broad College of Law and has agreed to pay them their reasonable fees and costs for the services rendered herein.

## **COUNT I-DENIAL OF A REASONABLE ACCOMMODATION IN VIOLATION OF 42 U.S.C. § 3604(f)(3)(B)**

50. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 49 as if restated herein.

51. At all times material, Defendants had actual knowledge that Mr. Grossbard has a psychiatric disability and regarded him as a person with a disability.

52. At all times material, Defendants were aware that Mr. Grossbard's disability made it difficult for him to use computers and other electronic devices and needed to pay by check

53. When requests were made by Mr. Grossbard or on his behalf to pay his rent by check rather than through the online system, his reasonable accommodation request was ignored and rejected.

54. Pursuant to 42 U.S.C. § 3604(f)(3)(b), it is unlawful to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

55. Mr. Grossbard's reasonable accommodation request to pay his rent by check would not be an undue financial or administrative burden on Lomar or a fundamental alteration.

56. At no time did Gottlieb or any of Lomar's agents, seek to retain any opinion from a medical professional as to Mr. Grossbard's disability and needs.

57. Mr. Grossbard's reasonable accommodation request was necessary for his equal use and enjoyment of his home.

58. Defendants' failure to modify its existing policies and practices to accommodate Mr. Grossbard's disability, by refusing to accept his rent payments by check, constitutes a denial of his reasonable accommodation request.

59. Defendants' actions were in total and reckless disregard for Mr. Grossbard's rights, showed indifference to Mr. Grossbard's disability-related needs and were therefore discriminatory and unlawful.

60. Further, as a direct and proximate result of Defendants' discrimination, Mr. Grossbard has suffered irreparable loss and injury including, but not limited to actual damages, humiliation, emotional distress, and deprivation of the right to equal housing opportunities regardless of disability.

WHEREFORE, Plaintiff, ANDREW GROSSBARD, demands judgment against LOMAR APARTMENTS LLC. and BRUCE GOTTLIEB, to declare that the actions of Defendants violated the Fair Housing Amendments Act, by discriminating against persons with disabilities, and to award Plaintiff compensatory and punitive damages, and their attorneys' fees and costs as well as injunctive relief as follows:

a) That the Court declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating persons with disabilities;

b) That the Court enjoin the Defendants from evicting or non-renewing Mr. Grossbard's leasehold unless a non-pretextual, non-discriminatory reason applicable to all other

tenants is demonstrated to the Court,

c) That the Court enjoin Defendants from discriminating against Plaintiffs or any other person, because of because of their disability or need for a reasonable accommodation;

d) That the Court order Defendants to provide a notice to all owners and tenants of all properties they own and operate of their rights under the Fair Housing Act, including their right to have accommodations because of a disability;

e) That the Court order that LOMAR instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently managed and/or controlled by LOMAR, of the terms of the Court's Order and the Fair Housing Act, Fair Housing Act and implementing regulations;

f) That the Court order that LOMAR to maintain for inspection by Plaintiffs and all other tenants or owners at its condominium offices, copies of the Fair Housing Act, Fair Housing Amendments Act and implementing regulations

g) And grant any other such relief as this Court deems just and equitable.

**COUNT II- DENYING OR MAKING A DWELLING UNAVAILABLE IN VIOLATION OF 42 U.S.C. § 3604(f)(1)**

61. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 49. above as though fully set forth herein.

62. Defendants treated Mr. Grossbard differently solely because of his disability.

63. Defendants decided to end Mr. Grossbard's lease and decided not to renew his lease because of his disability or disability-related needs.  These included his desire to communicate verbally with employees or agents of the Defendants and his inability and

need for reasonable accommodations for rent payments.

64. Pursuant to 42 U.S.C. § 3604(f)(1), it is unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter.

65. Defendants were explicitly notified of Mr. Grossbard's disability and the manner in which his disability manifested—that he was unable to use electronic devices for daily activities. Mr. Grossbard had paid his rent by check since he moved into the property.

66. This failure to renew Mr. Grossbard's lease was a result of the request for accommodation that he needed due to his disability. Therefore, Defendants have made Mr. Grossbard's dwelling unavailable to him in violation of 42 U.S.C. § 3604(f)(1).

67. During and following this denial of housing, Lomar Apartments held itself out as having many apartments to rent.

68. Further, as a direct and proximate result of Defendants' discrimination Mr. Grossbard has suffered injury including, but not limited to actual damages, humiliation, emotional distress, and deprivation of the right to equal housing opportunities regardless of disability.

WHEREFORE, Plaintiff, ANDREW GROSSBARD, demands judgment against LOMAR APARTMENTS LLC. and BRUCE GOTTLIEB, to declare that the actions of Defendants violated the Fair Housing Amendments Act, by discriminating against persons with disabilities, and to award Plaintiff compensatory and punitive damages, and their attorneys' fees and costs as well as injunctive relief as follows:

a) That the Court declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating persons with disabilities;

b) That the Court enjoin the Defendants from evicting or non-renewing Mr. Grossbard's leasehold unless a non-pretextual, non-discriminatory reason applicable to all other tenants is demonstrated to the Court,

c) That the Court enjoin Defendants from discriminating against Plaintiffs or any other person, because of because of their disability or need for a reasonable accommodation;

d) That the Court order Defendants to provide a notice to all owners and tenants of all properties they own and operate of their rights under the Fair Housing Act, including their right to have accommodations because of a disability;

e) That the Court order that LOMAR instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently managed and/or controlled by LOMAR, of the terms of the Court's Order and the Fair Housing Act, Fair Housing Act and implementing regulations;

f) That the Court order that LOMAR to maintain for inspection by Plaintiffs and all other tenants or owners at its condominium offices, copies of the Fair Housing Act, Fair Housing Amendments Act and implementing regulations

g) And grant any other such relief as this Court deems just and equitable.

**COUNT III-UNLAWFUL RETALIATION UNDER 42 U.S.C. § 3617**

69. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 49 above as though fully set forth herein.

70. Defendants were explicitly notified that Mr. Grossbard was requesting a reasonable accommodation and if such accommodation was denied that he was going to file an action

under the Fair Housing Act.

71. Defendants were notified that any actions taken because of Mr. Grossbard's exercise of his rights under the Fair Housing Act would be retaliation in violation of the Fair Housing Act.

72. Defendants unlawfully retaliated against him by declining to renew his lease. Further, as a direct and proximate result of Defendants' retaliation, Mr. Grossbard has suffered injury including, but not limited to actual damages, humiliation, emotional distress, and deprivation of the right to equal housing opportunities regardless of disability.

WHEREFORE, Plaintiff, ANDREW GROSSBARD, demands judgment against LOMAR APARTMENTS LLC. and BRUCE GOTTLIEB, to declare that the actions of Defendants violated the Fair Housing Amendments Act, by retaliating against persons with disabilities, and to award Plaintiff compensatory and punitive damages, and their attorneys' fees and costs as well as injunctive relief as follows:

a) That the Court declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating persons with disabilities;

b) That the Court enjoin the Defendants from evicting or non-renewing Mr. Grossbard's leasehold unless a non-pretextual, non-discriminatory reason applicable to all other tenants is demonstrated to the Court,

c) That the Court enjoin Defendants from discriminating against Plaintiffs or any other person, because of because of their disability or need for a reasonable accommodation;

d) That the Court order Defendants to provide a notice to all owners and tenants of all properties they own and operate of their rights under the Fair Housing Act, including their right to have accommodations because of a disability;

e) That the Court order that LOMAR instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently managed and/or controlled by LOMAR, of the terms of the Court's Order and the Fair Housing Act, Fair Housing Act and implementing regulations;

f) That the Court order that LOMAR to maintain for inspection by Plaintiffs and all other tenants or owners at its condominium offices, copies of the Fair Housing Act, Fair Housing Amendments Act and implementing regulations

g) And grant any other such relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

Dated this 19th day of August, 2023

By: */s/ Matthew W. Dietz*

*Matthew W. Dietz, Esq.*
Florida Bar No.: 0084905
*Leigh C. Markowitz, Esq.*
Florida Bar No.: 1017900
*Talhia S. Rangel, Esq.*
Florida Bar No.: 1018408
Disability Inclusion and Advocacy Law Clinic
  Nova Southeastern University,
  Shepard Broad College of Law
3305 College Ave., Ft. Lauderdale, FL 33314
Telephone: 954-262-6063
Email: mdietz@nova.edu
    ts872@nova.edu
    lmarkowi@nova.edu
    Jworkman@nova.edu